Mike SHUMEK, Plaintiff

v.

Ken McDOWELL, Defendants.

No. 3:09–CV–216.

United States District Court, M.D. Pennsylvania.

Sept. 30, 2010.

Cynthia L. Pollick, The Employment Law Firm, Pittston, PA, for Plaintiff.

Joel M. Wolff, Elliott Greenleaf & Siedzikowski, P.C., Scranton, PA, John G. Dean, Elliott Greenleaf & Dean, Wilkes–Barre, PA, for Defendants.

**MEMORANDUM ORDER**

YVETTE KANE, Chief Judge.

Presently pending before the Court is the Report and Recommendation of Magistrate Judge William T. Prince addressing Defendant's motion for summary judgment, (Doc. No. 25), along with Defendant's objections, (Doc. No. 27), and Plaintiff's response, (Doc. No. 29). The Court will adopt the recommendation in full, but will write briefly to address Defendant's objections.[1]

This case concerns a civil action in which Plaintiff alleges political termination in violation of 42 U.S.C. § 1983. Plaintiff was an employee of the Lackawanna County Controller's Office for over 25 years. Defendant was elected County Controller in November 2007. On January 7, 2008, within hours of Defendant being sworn into office, Plaintiff was terminated from his position as office manager. Plaintiff filed the present action asserting that his termination was for political reasons, in violation of his First Amendment rights, and that he was not afforded his due process rights.

The factual details and legal standards governing Defendant's motion for summary judgment are comprehensively set forth in Judge Prince's report and need not be reproduced here. In his report, Judge Prince recommends that Defendant's summary judgment motion be granted in part and denied in part. Specifically, Judge Prince found that the motion should be granted as to Plaintiff's failure to train claim, but that it should be denied as to Plaintiff's claims that he was terminated for political reasons, that his

---

1. The Magistrate Act, 28 U.S.C. § 636, and Federal Rule of Civil Procedure 72(b), provide that any party may file written objections to a magistrate's proposed findings and recommendations. In deciding whether to accept, reject, or modify the R & R, the Court is to make a de novo determination of those portions of the R & R to which objection is made. 28 U.S.C. § 636(b)(1).

due process rights were violated, and that punitive damages should be assessed.

■ Defendant first challenges Judge Prince's finding that Plaintiff has put forward sufficient evidence of a wrongful discharge claim based on political patronage. To make out a prima facie claim, a plaintiff "must show that (1) [he] was employed at a public agency in a position that does not require political affiliation, (2) [he] was engaged in constitutionally protected activity, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir.2007) (citation omitted). In support of the third prong, a plaintiff must put forward evidence demonstrating that the defendant knew of the plaintiff's political persuasion and that such knowledge caused the defendant to take the adverse employment action against the plaintiff. *See id.* at 275.

■ Defendant contends that there has been no evidence submitted by Plaintiff "that Defendant had knowledge of [Plaintiff's] political affiliation." (Doc. No. 28 at 11.) However, Defendant fails to address the report's finding that Plaintiff has put forward sufficient evidence of being terminated for *not* participating in political activity, specifically in regard to Defendant's election campaign. As recognized by Judge Prince, an "apolitical" stance can be a constitutionally protected activity. *See Galli*, 490 F.3d at 272 ("[T]he right not to have allegiance to the official or party in power itself is protected under the First Amendment, irrespective of whether an employee is actively affiliated with an opposing candidate or party.") (citation omitted). Therefore, the Court finds no error in Judge Prince's finding that an issue of genuine material fact remains for the jury as to this claim.

■ Defendant next objects to the report's denial of summary judgment as to

Plaintiff's due process claim. Defendant asserts that, because union grievance procedures are being made available to Plaintiff under a collective bargaining agreement, Plaintiff has not presented a cognizable due process claim. However, as recognized by Judge Prince, where a public-employee plaintiff has a property right to a position, "post-termination due process will not necessarily satisfy his rights under § 1983." (Doc. No. 25 at 20); *see also Dee v. Borough of Dunmore*, 549 F.3d 225, 233 (3d Cir.2008) ("Only in extraordinary situations where some valid government interest is at stake is it permissible to postpone the hearing until after the deprivation has already occurred." (citations and internal quotation marks omitted)); *Solomon v. Philadelphia Housing Auth.*, 143 Fed.Appx. 447, 455 (3d Cir.2005) (finding no due process violation where public employee was given pre-deprivation process of notice of the charges against him, evidence supporting those charges, and an opportunity to respond, all in a timely manner). Therefore, the Court finds no error in the report's conclusion that Plaintiff has stated sufficient facts to support a procedural due process claim.

Finally, Defendant argues that Plaintiff's claim for punitive damages should be dismissed. Defendant claims that "Plaintiff is required to show that Defendant's actions were motivated by evil motive or intent or a callous indifference to Plaintiff's constitutionally protected rights" and that Plaintiff cannot make such a showing. (Doc. No. 28 at 7–8.) The report found that, because there were genuine issues of material fact as to Plaintiff's claims, the required intent to assess punitive damages against Defendant "should be decided by the trier of fact." (Doc. No. 25 at 23.) The Court finds no error in the determination that Plaintiff has put forward sufficient evidence to defeat summary judgment as to his claim for punitive damages.

*See Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (holding that a jury may be permitted to assess punitive damages where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); *Brennan v. Norton,* 350 F.3d 399, 428–29 (3d Cir. 2003); *see also Alexander v. Riga,* 208 F.3d 419, 430 (3d Cir.2000) (noting that the term "reckless indifference," in the context of punitive damages, refers "not to the egregiousness of the [defendant's] conduct, but rather to the [defendant's] knowledge that [he] may be acting in violation of federal law.").

After reviewing Defendant's objections, the Court finds no error in Judge Prince's report and recommendation. **ACCORDINGLY,** on this 30th day of September, 2010, upon consideration of Magistrate Judge Prince's Report and Recommendation and Plaintiff's objections, it is **HEREBY ORDERED THAT** the report is adopted in full. Accordingly, summary judgment is granted in favor of Defendant as to Plaintiff's failure to train claim but denied in all other respects.

It is **FURTHER ORDERED** that a telephone conference will be held on October 14, 2010 at 2:00 PM to set deadlines in preparation for trial. Plaintiff's counsel shall initiate the call.

### *REPORT AND RECOMMENDATION*

WILLIAM T. PRINCE, United States Magistrate Judge.

### I. Procedural Background

Pursuant to an Order entered on May 13, 2010 (Doc. 22), the Honorable Thomas I. Vanaskie[1] referred the Defendant's pending Motion for Summary Judgment to the undersigned for the purpose of preparing a Report and Recommendation.

Plaintiff, Mike Shumek, commenced this action alleging political termination in violation of 42 U.S.C. § 1983 by filing a complaint on February 2, 2009 against Defendant Ken McDowell. (Doc. 1). On December 1, 2009, Defendant filed a Motion for Summary Judgment along with a supporting materials (Docs. 13–16). Plaintiff filed a Brief in Opposition to the Motion for Summary Judgment and an Answer to the Statement of Facts on January 9, 2010 (Docs. 19–20), to which the Defendant filed a Reply Brief on January 25, 2010. (Doc. 21). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Defendant's Motion for Summary Judgment be granted in part and denied in part.[2]

### II. Factual Background

Plaintiff was an employee of the Lackawanna County Controller's Office for over 25 years.

On January 7, 2008, Plaintiff was terminated from his position by Defendant within hours of Defendant being sworn into office as County Controller, having been elected to that position in November, 2007. At the time of his termination, Plaintiff was employed as the office manager. The letter informing him of his termination included the following statement:

> I want to inform you that your termination is not for cause but rather because the new administration desires to

---

1. By Order dated June 7, 2010, this matter was reassigned to the Honorable James F. McClure, Jr. (Doc. 24).

2. In a related case, *Delhagen v. McDowell,* No.: 3:08–CV–285, Judge Vanaskie issued a Memorandum and Order on March 24, 2010 (Doc. 29) addressing the issues raised herein in a factually similar case. The court is guided by his Opinion in this Report and Recommendation.

have the supervisory and management positions held by individuals with which [sic] the Controller is familiar and who share his management philosophy.

(Doc. 19–2).

While employed in the Controller's Office, Plaintiff was a member of the union, Local 668, and paid dues. He was thus party to a Collective Bargaining Agreement ("CBA"), which provided him with certain grievance procedures. Pursuant to the CBA, he maintains that his termination was limited to reasons of "just cause." After receiving the termination letter dated January 7, 2008, Plaintiff filed a grievance pursuant to the CBA on January 10, 2008. (Doc. 19–3). Thereafter, on February 20, 2008, Lackawanna County denied his grievance, asserting that Plaintiff's claim was not substantially arbitrable inasmuch as his position as office manager fell outside of the Collective Bargaining Unit. (Doc. 19–4). Plaintiff was subsequently informed that an appeal to arbitration was refused. (Doc. 19–7 at 19:11–13).

Plaintiff testified that, in his position as office manager, his everyday tasks included printing and approving checks. (*Id.* at 26–28). However, he stated that his work involved neither discretionary functions nor policy-making decisions. (*Id.* at 12:25–13:1). Additionally, while he participated in elections by voting, Plaintiff did not campaign for the candidates for Controller. (*Id.* at 16). When asked in his deposition whether the Defendant knew Plaintiff's political affiliation, Plaintiff testified that he wouldn't know if, prior to his termination, the Defendant knew of his political association but surmised that the Defendant must know inasmuch as he was fired for having a different political philosophy. (*Id.* at 25;16–20). Based on the termination letter, Plaintiff believes his termination was due to the fact that he did not participate in the Defendant's campaign. (*Id.* at 42:16, 43:23)

Plaintiff filed the present action asserting his termination was for political reasons, in violation of his rights under the First Amendment, and that he was not afforded his due process rights through a pre-termination grievance and arbitration process. He claims further that the Defendant failed to train his employees regarding proper termination of individuals in that office and/or have policies in place to prevent improper termination. Included in his complaint is a cause of action for punitive damages.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment "... forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Brenner v. Local 514, United Brotherhood of Carpenters and*

*Joiners of America,* 927 F.2d 1283, 1287–88 (3d Cir.1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler,* 986 F.2d 682 (3d Cir. 1993); *Clement v. Consolidated Rail Corporation,* 963 F.2d 599, 600 (3d Cir.1992); *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. *See Harter v. G.A.F. Corp.,* 967 F.2d 846, 851 (3d Cir.1992).

## IV. Discussion

 Plaintiff's claim is bought pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* Section 1983 imposes civil liability upon any person who, under color of state law, deprives someone of the rights, privileges, or immunities secured by the federal Constitution or the laws of the United States. *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir.2000). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

In his Motion for Summary Judgment, Defendant maintains that Plaintiff cannot succeed in his political termination action inasmuch as he was neither politically active nor was his political affiliation known to the Defendant; that Plaintiff's due process claims should be dismissed inasmuch as arbitration and grievance procedures are available and being pursued on the issue; that Plaintiff has not established a nexus between his termination and a failure to train theory; and that Plaintiff has failed to state facts to support a claim for punitive damages against the Defendant.

### (A) First Amendment

 Political discharge cases are governed generally by two Supreme Court decisions: *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In *Elrod,* the Supreme Court held that discharging cer-

480

tain public employees solely on the basis of their political affiliation infringes upon their First Amendment rights to belief and free association. *Id.* at 355–57, 96 S.Ct. 2673. However, it specifically exempted from this general prohibition the politically-motivated discharge of persons who hold confidential or policy making positions. *Id.* at 367–68, 96 S.Ct. 2673. While there is no bright-line test to determine whether an employee holds such a position, *Elrod* suggests that "consideration should . . . be given to whether the employee acts as an advisor or formulates plans for the implementation of broad policy goals." *Id.* at 368, 96 S.Ct. 2673. Subsequently, in *Branti*, the Supreme Court addressed whether, in certain situations, political affiliation is a legitimate factor for a public hiring authority to consider. *Branti*, 445 U.S. at 518, 100 S.Ct. 1287. It determined that such a factor may be appropriate. "[T]he question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.*

Based on these general principles, the Court of Appeals for the Third Circuit has developed a three-part test based to establish a prima facie case of wrongful discharge based on political patronage. A plaintiff "must show that (1)[he] was employed at a public agency in a position that does not require political affiliation, (2)[he] was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir.2007) (citing *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir.1997)); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663–64 (3d Cir.2002). To determine whether Plaintiff has put forth enough evidence to establish a prima facie case, each of these factors will be addressed *in seriatim.*

### 1. Political Affiliation

To establish the first prong of a political discharge cause of action, a Plaintiff must establish that the position in which he worked does not require a political affiliation. *Galli* at 271. The burden shifts to the government if it claims political affiliation is central to the job itself. *Id.* The analysis turns on whether the position involved "policy-making," in which positions political patronage is permitted. *Elrod* at 467, 96 S.Ct. 2673.

In examining a political discharge case, a court is required to engage in a fact-specific inquiry of the nature and responsibilities of the job at issue. *See Zold v. Township of Mantua*, 935 F.2d 633, 635 (3d Cir.1991). In evaluating whether a position falls under the umbrella of a policy-making post, a court can be guided by the following factors:

(1) "whether the employee's duties are simply clerical or related to law enforcement [or] nondiscretionary or technical,"

(2) "whether the employee participates in Council discussions or other meetings,

(3) whether the employee prepares budgets

(4) [whether the employee] has authority to hire or fire employees,

(5) the salary of the employee, and

(6) the employee's power to control others and to speak in the name of policymakers."

*Brown v. Trench*, 787 F.2d 167, 169 (3d Cir.1986) (citations omitted). "[The] key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility but whether the employee has 'meaningful input into decision-making concerning the nature and scope of a major [government] program.'" *Id.* at

169–70 (quoting *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir.1981)).

█ Although the resolution of this issue is not certain, Plaintiff has put forth sufficient evidence for a reasonable jury to conclude that the office manager position was not a policy-making post. In his deposition, Plaintiff stated that he "wasn't in management" and he didn't make any policy-making decisions or management decisions in the office. (Doc. 19–7, 12:25–13:1). In his tasks of printing and approving checks, he testified that, as the office manager, he did not have the authority to approve or disapprove payments to vendors, rather, that was within the discretion of the office. (*Id.* at 28:18–20). He stated further that he never made a policy or an advisor decision for the Controller's Office (*id.* at 49: 12–14), that he had no involvement in formulating broad goals for the office (*id.* at 49:15–18), and that he had no input into decision-making concerning the nature and scope of any major program. (*Id.* at 46:19–22). He testified in his deposition that he had no input in the policies of the Controller's Office and that he had no authority to hire and fire people. (*Id.* at 48:24–49:2). It summation, Plaintiff has put forth sufficient evidence that could lead a reasonable jury to conclude that the office manager was not a policy-making position within the Controller's Office. It is concluded, therefore, that Plaintiff has satisfied the first prong of a prima facie case of political discharge.

### 2. Constitutionally Protected Conduct

█ The second prong of a political patronage case requires a Plaintiff to demonstrate that he engaged in constitutionally protected conduct. *Galli, supra* at 272 (citing *Stephens, supra* at 176). Constitutionally protected political activity "is broader than joining a political party." *Id.* "[T]he right not to have allegiance to the official or party in power itself is protected under the First Amendment, irrespective of whether an employee is actively affiliated with an opposing candidate or party." *Id.* (citing *Branti*, 445 U.S. at 519, 100 S.Ct. 1287) (holding that continued public employment "cannot properly be conditioned upon ... allegiance to the political party in control"). *See, e.g., Robertson v. Fiore*, 62 F.3d 596, 600–01 (3d Cir.1995) (holding that a plaintiff can meet the second prong of a prima facie political discrimination claim if she suffers because of active support for a losing candidate within the same political party); *Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir.1987) (the First Amendment also protects an employee from discrimination for failure to support the winning candidate). Accordingly, this prong encompasses both the politically active and the apolitical employee.

Defendant argues that because Plaintiff concedes that he did not attend political rallies, make campaign contributions, place political signs in his yard or place a bumper sticker on his car, he cannot demonstrate that he was dismissed due to his political affiliation. This contention neglects to acknowledge the fact that apolitical activity is constitutionally protected equally to one's right to support a competing candidate or to be a member of a political party. Consequently, Plaintiff has offered facts to establish the second prong of a prima facie case, *to wit*, that he engaged in constitutionally protected activity.

### 3. Substantial or Motivating Factor

█ The final prong of a prima facie case of political termination requires Plaintiff to put forth evidence that his constitutionally protected conduct was a substantial or motivating factor in Defendant's decision to discharge him from employment. *Galli, supra*, at 275. "[I]mplicit in th[is] prong is a requirement that the plaintiff produce sufficient evidence to show [that] the defendant knew of [the]

plaintiff's political persuasion," which requires proof of both knowledge and causation. *Id.* (quoting *Goodman, supra,* at 664). Plaintiff must thus produce evidence showing that the Defendant knew he was not his supporter, as a result of which he was terminated. *Id.* (citing *Stephens,* 122 F.3d at 177). As with all evidence, Plaintiff can establish proof of knowledge and causation through either direct or circumstantial evidence. *See Goodman, supra* at 664.

### (a) Knowledge

Defendant maintains that, in establishing whether political affiliation was a substantial or motivating factor in his dismissal, Plaintiff is required to establish that Defendant had knowledge of his political affiliation in addition to a showing of causation. Defendant contends that, because Plaintiff stated that the Defendant did not know of Plaintiff's political affiliation and because Plaintiff was not politically active, his First Amendment claim fails as a matter of law. Much of his argument on this issue if based on the following statement made by Plaintiff in his deposition:

Q: Do you know whether or not Mr. McDowell knew your political affiliation before he terminated you?

A: I wouldn't know that but he knows—I would say he knows we're a Democratic office[.]

(Doc. 19–7 at 25:13–17). Based on this exchange, Defendant argues that Plaintiff has conceded that Defendant was unaware of his political affiliation, thus foreclosing his ability to establish the knowledge requirement under the third prong of a prima facie case of political termination.

The court disagrees and find such an argument flawed. First, the deposition testimony does not demonstrate that the Plaintiff acknowledged that the Defendant was unaware of Plaintiff's political affiliation. Rather, it establishes only that the Plaintiff did not know whether the Defendant knew of Plaintiff's political affiliation or not. Further, it would be sufficient to meet the knowledge requirement by establishing, directly or circumstantially, that the Defendant was aware of who his supporters were, through their campaign donations, display of yard signs or bumper stickers or attendance at political functions, and that the Plaintiff was not included in this group.

The Defendant testified in his deposition that he did not know whether Plaintiff supported his candidacy and that he was unaware whether Plaintiff contributed money to his campaign or attended and of his political functions. (Doc. 19–9, 35:25–36:4). Moreover, the Defendant's letter of termination letter to the Plaintiff stated that "the new administration desires to have the supervisory and management positions held by individuals with which [sic] the Controller is familiar and who share his management philosophy." (Doc. 19–2). In limiting the pool of potential supervisory and management candidates to those individuals with whom Defendant "is familiar and who share his management philosophy" has the effect to exclude non-supporters or apolitical employees such as Plaintiff. Without having direct knowledge of Plaintiff's political affiliation, Defendant's proffered reason for Plaintiff's termination creates a constitutionally impermissible condition of employment that has the potential to violate an employee's constitutionally protected conduct.

Accordingly, when viewing the facts in a light most favorable to the Plaintiff, the court concludes that a reasonable jury could find that Defendant knew or believed that the Plaintiff was not a supporter of his candidacy for Controller.

### (b) Causation

Turning next to the issue of causation, Plaintiff must offer evidence from which a

reasonable jury could conclude that the Defendant terminated him for not supporting him or his candidacy. *Galli, supra* at 275. Defendant argues that causation cannot be established because Plaintiff, by his own admission, was not politically active. Although the record indicates that Plaintiff did not support Defendant's candidacy, he also was not politically active in the campaign of the Defendant's opponent, John Mellow. Moreover, Plaintiff's successor, Elizabeth Hopkins, was involved in the Defendant's campaign for Controller, had a sign for him in her yard and attended his campaign events. (Doc. 19–9, 25:21–23, 26:4–5, 17–18, 32:22). Defendant appointed Ms. Hopkins to the office manager position without an interview or selection process. (*Id.* at 26:7–13). When considering these facts, as well as the circumstance and timing of his discharge and the letter terminating his employment in the Controller's Office, there are sufficient facts based upon which a reasonable jury could conclude otherwise.

Plaintiff was fired within hours of Defendant being sworn-in to office. Further, Plaintiff's successor in the office manager position was chosen in December, 2007—well before Defendant took office. (*Id.* at 60:6–7). Plaintiff stated in his deposition that he believed he was terminated because the Defendant wanted someone that shared his (Defendant's) management philosophy, but that the Defendant never asked him about his (Plaintiff's) philosophy, political or otherwise (Doc. 19–7, 46:5–11). Plaintiff also testified that since his hiring in the Controller's office over two (2) decades ago, there have been four (4) Controllers, none of whom ever terminated Plaintiff. (*Id.* at 46:12–18).

Moreover, the letter of termination stated that Defendant was interested in an office manager with whom "the Controller is familiar and who share his management philosophy." (Doc. 19–2). Considering this language in conjunction with the fact that Defendant never discussed the office manager job of management philosophy with the Plaintiff could reasonably be construed as political patronage. Taken together, a reasonable jury could find that such facts raise an inference that Plaintiff was terminated because of his perceived lack of support for the Defendant. Plaintiff has satisfied the causation element to establish the third prong of a prima facie case of political discharge by putting forth sufficient evidence for the fact-finder to determining that his political affiliation was a substantial or motivating factor in his dismissal.

Having concluded Plaintiff has established sufficient evidence to demonstrate that his First Amendment rights were violated, it is recommended that summary judgment on Count I be denied.

### (B) Pre–Termination Due Process

▉ "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown,* 455 F.3d 225, 233–34 (3d Cir.2006) (citing *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)). *See also Good v. City of Sunbury,* 352 Fed.Appx. 688 (3d Cir.2009). Plaintiff maintains that, as a member of the union whose employment was covered by the CBA, he could only be dismissed "for cause." (Doc. 1, ¶ 16). He maintains, moreover, that the "just cause" provision in the union contract grants the employee a protected property interest in his continued employment, entitling the employee to a due process hearing prior to discharge. *Dee v. Borough of Dunmore,* 549 F.3d 225, 231 (3d Cir.2008); *Wilson v. MVM, Inc.,*

475 F.3d 166, 177 (3d Cir.2007) (internal citation omitted); *see also Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir.1991) (recognizing that a property interest protected under the Fourteenth Amendment arises "where the contract itself includes a provision that the state entity can terminate the contract only for cause").

■ When a governmental employee has a property interest in his employment, the Supreme Court has recognized that, prior to an involuntary separation, an employee must be afforded an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Observing that the deprivation of one's livelihood is severe, enabling the employee to be heard and address the issues raised prior to termination carries apparent and significant value in reaching an informed decision on discharge. *Id.* at 543, 105 S.Ct. 1487. "The governmental interest in immediate termination does not outweigh" the employee's private interest in retaining employment and some opportunity for to present his side of the case. *Id.* at 543–44, 105 S.Ct. 1487. "[A]ll the process that is due is provided by a pretermination opportunity to respond … [.]" *Id.* at 547–48, 105 S.Ct. 1487.

■ In the present case, Defendant has not addressed whether Plaintiff has a property right in his position in the Controller's Office. Assuming he has such a right, Plaintiff was not afforded an opportunity to be heard on his termination to which those with a property interest in their continued employment are entitled when they are terminated "for cause." Further, considering the fact, as Defendant concedes in the letter discharging him, that Plaintiff was not dismissed "for cause," it would stand to reason that Plaintiff had an even greater right to a hearing prior to his termination. Rather, the prof-

fered reason for Plaintiff's termination was that he did not share in Defendant's management philosophy. Whether it is true that the Plaintiff had a different management philosophy from Defendant may have been disproven had Defendant discussed the job with Plaintiff prior to his termination. However, inasmuch as no hearing on the issue prior to his discharge occurred, the opportunity to learn if each shared the other's management philosophy was lost.

Defendant asserts that Plaintiff has recourse via the CBA to challenge his termination. Plaintiff contends, however, that the lack, or denial, or pre-termination due process is not cured with subsequent post-termination due process.

■ As noted by Judge Vanaskie in the companion case of *Delhagen v. McDowell*, the Third Circuit's holdings upon which the Defendant relies did not deal with an allegation that pre-termination due process was required prior to termination *See Delhagen v. McDowell*, No.: 3:08–CV– 285, Doc. 29, p. 25 (Vanaskie, J.). The availability of post-termination proceedings may not preclude a claim of pre-termination process deprivation in the absence of a situation where, as here, a compelling reason for termination, prior to being afforded a hearing on the issue, has not been offered. (*Id.* at 25–26) (citing *Solomon v. Phila. Hous. Auth.*, 143 Fed.Appx. 447, 455 (3d Cir.2005) ("Regardless of whether Appellant could have challenged the suspension through the grievance procedure after he had already been suspended does not remove all need for basic pre-deprivation … process.")). *See also Montgomery v. City of Ardmore*, 365 F.3d 926, 937 (10th Cir.2004) ("Post-termination remedies, no matter how elaborate, do not relieve the employer of providing the minimal pre-termination procedural protections noted in *Loudermill*.").

Assuming Plaintiff has a property in interest in his position, the existence of post-termination due process will not necessarily satisfy his rights under § 1983. Accordingly, regardless of the availability of post-termination due process under the CBA, Plaintiff has stated sufficient facts to establish a procedural due process claim. It is therefore recommended that the Motion for Summary be denied as to Count II.

### (C) Failure to Train

 "Establishing municipal liability on a failure to train claim under § 1983 is difficult." *Reitz, supra* at 145. "[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. County of Bucks,* 125 F.3d 139, 145 (3d Cir.1997) (citing *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "Failure to train … municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *See Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir.2000) (per curiam) (citing *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 408–09, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Indeed, while it is possible to maintain a failure to train claim without showing a pattern, the Supreme Court has stated that the burden on a plaintiff in such a case is high. A failure to train may amount to deliberate indifference where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights[.]" *City of Canton, supra* at 390, 109 S.Ct. 1197.

In the present case, Defendant asserts that Plaintiff "has only made conclusory allegations that Defendant failed to train its [sic] employees and agents[.]" (Doc. 14, p. 10). Plaintiff contends, however, that where employees endure numerous regime changes, training officials and/or agents is necessary to prevent employees from termination for political reasons. (Doc. 19, p. 14). He argues also that the "failure to protect employees in a politically charged atmosphere is a policy of the county that caused injury to the Plaintiff." (*Id.* at 20). However, as noted in the companion case *Delhagen,* the issue is not whether Defendant or his agents were trained on the matter of terminations, but whether the need to train was so obvious that a constitutional violation was likely to occur in the absence of training, or that county officials were notified of complaints or similar constitutional concerns and failed to act. *See Delhagen v. McDowell,* No.: 3:08–CV–285, Doc. 29, p. 27 (Vanaskie, J.) (citing *Harris, supra* at 390, 109 S.Ct. 1197).

 The court cannot conclude that there is sufficient evidence to support a failure to train claim. Plaintiff has not demonstrated how the need to train was so obvious nor that training Defendant and/or his agents would have resulted in different outcome. He has not put forth any evidence showing that Lackawanna County officials knew of such constitutional violations and disregarded it by failing to act. Moreover, Defendant testified in his deposition that he was aware that it is illegal to fire someone solely for political reasons. (Doc. 19–9 at 53:9–10). It appears, therefore, that training was not required to inform the Defendant to recognize the constitutional principles upon which Plaintiff bases his present action.

Consequently, he has not established that, in failing to train, Defendant was deliberately indifferent to his rights and his failure to train claim fails as a matter of law. Accordingly, it is recommended that Count III be dismissed.

*(D) Punitive Damages*

■ Defendant maintains that Plaintiff has alleged insufficient facts to establish a claim for punitive damages against him, asserting Plaintiff has alleged no facts demonstrating evil motive or intent in his termination. However, having concluded that the majority of Plaintiff's claims should survive summary judgment and proceed to trial, this claim, likewise, should be decided by the trier of fact. Consequently, it is recommended that the Motion for Summary Judgment be denied on Count VI, Punitive Damages.

## V. Recommendation

Based on the foregoing, it is respectfully recommended that Defendant's Motion for Summary Judgment (Doc. 13) be granted in part and denied in part. It is recommended that the Motion be granted with respect to Plaintiff's failure to train claim (Count III) and denied in all other respects.

June 11, 2010.